Good morning. Good morning. May it please the court. My name is Eitan Kasaljanych. I am representing Sean Moon in this appeal. Moon has been on SSI disability since May of 1995 when he applied for SSI disability. The main issue before this court is whether the ALJ's decision in this case regarding Moon's ability to work prior to May of 1995 is supported by substantial evidence and free of legal error. More specifically, this court must review the ALJ's decision for the limited time period of September 1993 until May 1995. Now the reason September 1993 is such an important date is that's the month in which, and it's actually a particular day in the month, when Moon turned 22 years of age. And the Social Security disability application here is for Social Security child's disability benefits based upon the earnings record of his mother who passed away in 1998. Was it 1995 or 1993 that he has to show that there was some disability? He has to show September 1993. So if he, for example, if he shows he's already been found disabled in May of 1995, if he proved January 1995, then he's unsuccessful. Right. So I'm trying to figure out what happened between 1993 and 1995. It's really hard to tell from the record, or are you saying that from the record we should be able to determine whether the ALJ made the correct determination because I'm curious, is there something that we should be aware of as to how Mr. Moon was found disabled in 1995? Was it based on the same record before this ALJ and the case before us right now? We don't know. It was actually very challenging for me to try to piece together from the little notes in various places in this file what actually had happened. I'm not even sure I completely figured it out when it was still in district court. The issue is that when he applied for benefits in 1995, he applied for Social Security benefits, disability benefits, and he applied for SSI disability benefits. He was apparently approved, I say apparently because that entire file was never made part of the record here. We know that his benefits started in May of 1995. Did his attorney argue before this ALJ what would have been in the 1995 file that would have been relevant to his determination here? She informed him of the prior award of benefits, and I believe asked him to obtain the file. But that's the other thing here. But did she not, I mean, I'm just trying to figure out in terms of whose burden. I know that there's a claim here that the ALJ should have produced the file, but if Mr. Moon's counsel didn't say what they would find or even come close to saying that, other than that he was found disabled after 1995, was there really an obligation on the ALJ to find the file when nobody else seemed to be that curious as to what was in the file for this determination? In trying to put together the pieces here and connect the dots, I think what happened is the administrative hearing, excuse me, the administrative attorney seemed to assume that the ALJ was going to rule in favor of her client because she was asking him, since he'd been found disabled in May of 1995, she was asking him to go 20 months further back in time. And the evidence that was in this file, she felt that it was sufficient to prove that. When you say evidence in this file, she felt, which is this file? And when I say this file, the evidence before you, the evidence that's in this record. And so although she informed him, well, there was this award of benefits in 1995, and that file's not here, it seems like she made some bad assumptions there that if she assumed he was going to rule in favor of her client based on what was in this record, then she wasn't jumping up and down going, why haven't you obtained the 1995 file? So is it our duty to review, I guess, the ALJ's decision for substantial evidence to see if the ALJ, you know, was correct in its determination? The evidence before the ALJ, it's my understanding, is everything up until 19 – well, that he's supposed to look at for this determination is up to September, I think, of 1993. Is that right? Well, technically, no, because he would need to look. To determine whether or not somebody is disabled in 1993, you wouldn't just stop in 1993, but sometimes other evidence that's after that date will relate back. Okay. And so really he needed to be looking at not just the evidence. It's the key dates are September 1993 through May of 1995. He needed to be looking not just at that time period, but at records before it and at records after it. All right, well, let's look at the records before it. It seems to me the only medical records are the four-month stay, I believe, he had when he was 15, 16. But those medical records, there's no real strong diagnosis there, or no significant medical notations. It was kind of more of a daily log. Am I correct in my – Well, I agree with you that with regard to the evidence from many years before 1993, I don't think that evidence – I mean, there was evidence of a psychiatric hospitalization as a child, but that doesn't necessarily tell us how he was doing once he was an adult. There was a – Dr. Koresh, I'm not sure if I'm pronouncing that right, in 1993, again, though, with depression as well as morbid obesity. So with regard to the evidence that's here, let's assume – there's two different ways to approach this. Okay. One is let's assume that everything actually is here. Maybe there isn't any additional medical evidence that was considered in the 1995 claim. That's certainly possible. Even assuming that, I think the ALJ still committed a legal error. Now, I'm not arguing here that there wasn't substantial evidence to support his decision, but that he committed a legal error in his analysis of the evidence. The error he committed was in failing to acknowledge anywhere in his decision that Moon had already been found disabled in May of 1995. And since there's a finding of disability, then under the Armstrong case, and under the Social Security ruling cited in Armstrong, he needed to call a medical expert in order to determine whether or not the actual disability onset date was earlier than that. Particularly if it was a chronic disease, right? Yes. This isn't a broken back related to some accident. It's a chronic illness. And in 1995, there was a finding that it was a disabling chronic disease. And we're looking at a time period two years before that, right? All events, you would need expert testimony as to the onset of that chronic disabling disease. Exactly. And let me make sure I know what the – as I understood it, there were three components to his disabling conditions. One was the clinical depression, including some suicidal and homicidal thoughts. The second was an eating disorder, which resulted in morbid obesity. And the third was agoraphobia. Is that the constellation? And none of those is likely to be a sudden onset. Well, yeah. It's not like an accident. Right. It's something that is a chronic illness that can develop over time. And it could actually – you could have a break, and it could start at a specific date as well. But here, based on the fact that there was evidence that these were problems even in high school, in his childhood, then that does show that it's a longstanding issue. And I appreciate what you're saying. I'm trying to track some of the evidence that did come out, because prior to 1993, we have the four-month stay when he was 15 in 1987. And then we had his Army short stint, but there was really no medical diagnosis from that, just some descriptions of his behavior. That's correct. And then in November of 1993, which is two months after his 22nd birthday, he was seen by Dr. Koresh, who diagnosed him with morbid obesity and depression. And then in December of 1993, there was this GAF assessment where it was indicated that he had some impairment in reality testing or communication or major impairments at work, school, family, judgment, thinking, or mood. And then on a 1995 insurance form, Dr. Berthold said, patient is obese secondary to his reactive depression. Neither condition is incapacitating, although functionally serious. And then it was a little over a year after his 22nd birthday in January of 1995, that was apparently his first threatening of suicide. And then four years later, in 1997, he was admitted to the Linden Oaks Hospital for suicidal ideation because of his weight. And it looks like from that moment on, certainly he had some serious problems. So I'm just trying to figure out, can we say that the ALJ was wrong based on what it had before him and based on the fact that he's supposed to look at what happened, whether he was as a child I guess up until 1993 or whether or not he would have been deemed disabled? Yes, we can say the ALJ was wrong and here's why. Okay. I can't emphasize enough the significance of the ALJ failing to acknowledge that he had been found disabled in May of 1995. If you take that fact away from this case, I think that we're really stuck with substantial evidence according to ALJ's decision. But that's a key piece of evidence. That's a very significant finding. He wasn't just found to have a problem. He was found to be officially disabled in May of 1995. And something else I should mention. Does that mean that for every time you have somebody who has a subsequent finding, you don't really need to look at much because they've had a finding in 1995? I mean, was this just an exercise for the ALJ to go through? That's what I wanted to address, what's significant about that finding in May of 1995. When he applied for SSI in May of 1995, on the SSI claim, they only looked at evidence of the question before them was whether or not he was disabled beginning in May of 1995. He at the same time apparently applied for Social Security Disability, but at that time his mother was still alive. He wasn't potentially eligible for child disability benefits. So they only looked at his own earnings record, which the date last insured was in 1992, I believe. And so they did not look. Nobody looked at whether or not he was disabled between 1993 and 1995. They didn't have to based on that application. There was no reason to. And so we don't know. So that's why this is sort of why this is still coming up at all. There was no adjudication of that time period. And the ALJ, through his imprecision here, and his significant imprecision of failing to acknowledge that he'd been found disabled in May of 1995, left this question open as to, since he's already been found disabled in May of 1995, how do you determine whether or not he was disabled a little bit sooner than that, now that that issue has arisen? And the way that it's done is by calling in a medical expert for advice to see if all of the evidence supports an inference of an earlier onset date. But the ALJ never even got to step one of that process because he didn't even acknowledge that there was this finding of disability in this case. Thank you, Counsel. Do you want to save a little bit of time for rebuttal? I do. Thank you very much. We'll hear from Ms. Wolfe. Excuse me. May it please the Court, Lisa Wolfe on behalf of the Commissioner. This is a Social Security disability case in which the ALJ provided, issued a decision that is supported by substantial evidence. Counsel, do you agree or disagree that the ALJ failed to start with the fact that this person has been receiving disability benefits since May of 1995? There is no explicit finding of disability in the ALJ decision. Okay. That is correct. Then why isn't Counsel correct that in view of a 1995 disability finding and conditions that would not normally be expected to have started instantly, like the fall from the roof, why the rulings and our case law would not require a medical expert be consulted about the backcasting, if you will, of the now-acknowledged disability? Correct. There's Armstrong, DeLorme, and the Sam cases that address the interpret SSR Social Security ruling 8320 in these instances in which the ALJ must call a medical expert. And why isn't that the case here? In those cases, there's explicit findings of disability. And this is also the medical evidence. Wait a minute. There is a finding of disability as of May 1995. He's been receiving benefits, which have to be by law based on a disability finding. So we have an unacknowledged but existing finding of disability in 1995 going forward. So why isn't this an Armstrong case? The Armstrong case is particularly illustrative. In that case, there was a 30-year history of the individual, the claimant in Armstrong struggling with his impairments. And here we have in 1987 the first hospitalization for mental illness. And he's not even claiming until 1993 when he turns 22. So, I mean, there's certainly a permissible inference in this record, it seems to me, that at least the eating disorder and the depression, if not the agoraphobia, go back as far as 1987. So I guess I really have difficulty understanding the government's resistance, in this case, to having a do-over. Being diagnosed with an impairment is not the equivalent to being disabled, nor is a global assessment of functioning score of 40, which was in December of 1993, which was from Dr. Bertholdt. But Dr. Bertholdt notes, if you look at longitudinally, the medical evidence comes nowhere near the claimants in Armstrong or DeLorme. He improved throughout 1994, which is after the age he turned 22. So this is a specialized program for childhood adult disability benefits. Mr. Moon is making a claim on his deceased mother's account. So he must prove disability before age 22. What's the evidence he improved? Well, throughout 1994, he had optimistic spirits. He lost 70 pounds. He was looking for a job. His mental health symptoms improved after that low GAF score, and that was a very low GAF score. But as the ALJ explained, that's just a snapshot in time. In our regulations, it's not visible. Well, he doesn't have to prove, though, even under the very strict requirements of the statute and regulations, he doesn't have to prove his inability to function every single second. You know, so there may be a terrific three weeks in there somewhere, but that doesn't preclude a finding, and there's no medical expert looking at all these records and including the 1995 finding and giving advice on what it all means for this time period. Well, the ALJ had all the evidence in front of him. Except the 1995 file. That was not available. At the transcript at pages 81 or 82, it's either not available or no folder exists, unknown, so it's unclear. That seems remarkable. What happened to it? To me. Right. Because, I mean, here you have the key, possibly, and what would make this very easy, because let's just say it's ambiguous even if, you know, if it's clear that he was or wasn't disabled prior to 1993 based on the records before the ALJ. Why wouldn't somebody produce the 1995 file and including the ALJ? I just don't understand that, and it's not clear in the record. That's what makes people criticize the government, quite frankly. What's going on here? What happened here? The Social Security Administration adjudicates a large volume of cases, and going back to 1995, we were a paper file. There is a large storage facility that's been described as the warehouse akin to the Indiana Jones where files go to disappear or perish, and there are occasions where we request a sentence six remand because the file's not available. It is unavoidable in this situation. There's certainly case law from this court saying that the ALJ has a duty to develop the file when there is an ambiguous record as there is here. So to whose detriment should that loss go? I mean, if it's the ALJ's duty to develop the record and the government has lost the file, what is the claimant's obligation, if any, in that situation? This is a 2007 application, so we must, you know, the person who developed this record and made the notation about the files was looking back in time and trying to find an older file. I think that's an important consideration to note here. So we're looking not too many years ago trying to recreate or find older folders, and the record shows that it's either unknown or no folder exists for the two applications made at pages 81 and 82 of the transcript. But what the ALJ did have in front of him, I'm sorry, does the record reflect that somebody did try to look for the file? When the Social Security Administration asks the DDS, which is a state agency that's federally funded, to develop these records at the initial and reconsideration phases. So that's why when you're looking through our records, you'll see the file is developed and there's a different notation on the record how the pages are enumerated. Those are developed by a state agency. They do the initial and reconsideration, and they develop all the records at that time. The ALJ did have the medical evidence, and even as late as November 1995, Dr. Berthold in Excerpt of Record 143 noted that Mr. Moon's depression and his obesity were functionally serious, but they were not incapacitating. So at this point, Mr. Moon is almost 24 years old. So this is not a case in which Mr. Moon produced medical evidence shortly within his turning 22 where he could demonstrate his functional limitations had increased. This is not within a reasonable frame for the ALJ to have been required under SAM to call a medical expert. Except it doesn't take account of, it seems to me, three things. One is the 1987 hospitalization, which clearly predates, and when you're mentally ill as a child, that's a pretty important problem. Secondly, you have Dr. Koresh in 1993. And thirdly, then you have the 1995 mysteriously granted social security disability benefits. So there is a span of time covered by this information that, to me, suggests that some medical expert needs to take a look at all of that and advise on what it means for the period that we're looking at. So the 1987 three-month psychiatric hold, as it is called, was because Mr. Moon was not attending school and his mom was facing criminal charges for his truancy. I went through each and every handwritten note from 1987, and it appears to be notations encouraging Mr. Moon to attend school, set goals, have healthy social relations, and improve himself. I didn't see a diagnosis in there. And in Dr. Koresh, he diagnosed depression, and he also diagnosed morbid obesity. He didn't outline any functional work limitations. And those diagnoses were found severe by the ALJ, and he fashioned a residual capacity functional finding here that limited Mr. Moon from all public contact and only occasional co-worker interaction, which is appropriate for Mr. Moon's social phobia. The ALJ acknowledged that Mr. Moon struggled, that he had difficulties. But the medical evidence throughout the period, and even up to November 1995, that's over two years after he turned age 22, showed that his treating psychologist believed that Mr. Moon was not incapacitated by his limitations. The November 1995 post dates the time when the government has already said that he's entitled to these benefits. So I don't understand how the government can rely on that, but without taking it as a given that starting in May 1995 he's entitled to benefits, because he's getting them. The ALJ here made a decision based upon the record he had in front of him and developed the best of his abilities. Well, closer to the point, I can't cite to the record, I'm sorry, I just have a note. In December of 1993, was he not diagnosed with dysthemia, which is chronic depression? Yes. That's two months after our relevant time period. Right. And it's a chronic condition, plus the fact that he had gained about 130 pounds or something, hadn't he? 120. Is that not a sign or symptom of depression sometimes? Your Honor, that's at page 169 of the excerpt of the record. Thank you. And what's interesting is that's from Dr. Bertholdt, his treating psychologist. And that's also the same notation for the GAF score of 40, which is indicative of serious problems, and you need to take a look at it. This is not the case, as unfortunately some of my cases are, where the ALJ drew a line in the sand and refused to look at any evidence after the date last ensured. Those cases do arise. In this instance, the ALJ discussed evidence of the GAF score December 93, after he turned 22, looked at all the chart notes from Dr. Bertholdt, showing that Mr. Moon was in good spirits, he was applying for jobs, and throughout 94 was doing well as a person. But then he's disabled, though, in May of 1995. See, that's our point. Maybe the evidence that the ALJ should have looked at is an expert opinion as to an onset. I wouldn't be remiss if I did not point you to another excerpt of record from Dr. Bertholdt. And we look at the treating psychologist, and the ALJ gave Dr. Bertholdt significant weight here, is that he had an uneasiness about Mr. Moon's work avoidance, that he thought that Mr. Moon, he wasn't, and I was going to begin with the credibility. Would that be a symptom of depression? Well, he wasn't complying with treatment recommendations. That would be a symptom of depression. He wouldn't take the free Prozac. He made, the ALJ found Mr. Moon's subjective allegations less than credible. It just seems impossible to me to say that the government has accepted him as unable to work and as deserving of benefits starting in May of 1995, and then at the same time make findings that are inconsistent with that, or at least potentially inconsistent with that by saying, well, maybe he's not even credible, and maybe he's just seeking benefits because he's malingering or something else. But without facing head-on the fact that he has been receiving those benefits, and what is the implication of that, I just have difficulty seeing how the ALJ did the complete job here. Assuming the ALJ had called an ME, we had the medical evidence that was contained in the file that showed that Mr. Moon was not incapacitated. Serious limitations, but not incapacitated. Well, maybe they will and maybe they won't. We can't substitute our judgment for either the medical expert or the agency, but we can require the agency to do its whole job. We do task the ALJs with making these very difficult cases, and these are often very sympathetic factors. In reading Mr. Moon's file the past few days, Mr. Moon presents a very sympathetic picture. He's had some real struggles, and, you know, it really is difficult to read this record. But we ask the ALJ to comb through all of this evidence. We look at the testimonial evidence. We look at the medical evidence. And this is a case in which the ALJ looked well beyond what's called the date last insured, September 93, and considered evidence through November 1995, showing that Mr. Moon had serious limitations but was not incapacitated. And at the district court, Mr. Moon's counsel conceded that the 1997 hospitalization was on the outer edge of the reasonable zone. And that really raises the question is what is the zone? How far do we look after the date last insured? You know, to what extent should we require the ALJ? And the ALJ did the best he could with the evidence that he had in front of him. Thank you, counsel. Thank you. You have some rebuttal time if you wish to use it. Thank you. I believe it's on page 84 in the transcript where there's the notation from a worker at Social Security that explains why the unadjudicated time period here was between July of 1992. And they looked through September 93 because for purposes of the child disability benefits, proving disability after September 93 proves nothing. And they pointed out that because of that date last insured on the prior application, they'd only adjudicated through June of 1992. And that's where I extracted those dates that hadn't been adjudicated. And I think this really does boil down to the ALJ not realizing, I think, or not, I don't know. I mean, it was brought up at the hearing. He knew he was on SSI benefits since 1995. But the ALJ, for whatever reason, didn't talk about it, didn't acknowledge it, and certainly didn't acknowledge his duty to develop the record by obtaining medical expert testimony when you've already proven an onset date that's after a date last insured, which is what happened here. That's Armstrong. You need to take medical expert testimony to see how much earlier it began. Thank you, counsel. We appreciate the arguments of both of you in this challenging case. They've been very helpful. The case is submitted and you are adjourned for this morning's session.
judges: Bury, Graber, Murguia